## William Welch v. The State.

### No. 2779.   Decided May 25, 1904.

**1.—Charge of the Court—Mistake of Fact—Bigamy.**

Where the court in charging on mistake of fact copied the statute in reference thereto, making a clear application of the law to the facts, and then instructed the jury that if defendant did not exercise proper care he could not rely upon mistake of fact, there was no error.

**2.—Same—Sources of Information Need Not Be Stated.**

It is not incumbent on the court to specify the sources of information which lead to a mistake of fact, and it was therefore not error to refuse a requested charge that if defendant, who was charged with bigamy, believed from the contents of certain letters that his first wife was dead, to acquit him.

**3.—Same—Seduction of First Wife Inadmissible.**

The fact that defendant, who was being tried for bigamy, had seduced his first wife and agreed to marry her to make reparation for his wrongs, is not admissible as evidence against him.

**4.—Same—Abortion—Inadmissible.**

The mere fact that appellant had permitted evidence to be introduced without objection, proving or tending to prove seduction, would not authorize the State to introduce evidence to prove that he proposed to create or attempt an abortion upon his first wife, on a trial of defendant for bigamy.

**5.—Evidence—Irrelevant Testimony.**

Testimony as to a conversation between defendant and the witness with reference to the procurement of medicine to commit or attempt an abortion on his first wife should not have been admitted on the trial of defendant for bigamy.

**6.—Same—Ambiguous Statement Inadmissible.**

Testimony as to a statement of a witness directed to defendant after his second marriage, to the effect that witness was very much afraid defendant had made the wrong step in life and witness was very much surprised, to which defendant made no reply, should have been excluded on trial of defendant for bigamy.

Appeal from the District Court of Hunt.  Tried below before Hon. H. C. Connor.

Appeal from a conviction of bigamy; penalty, three years imprisonment in the penitentiary.

From appellant's brief is taken the following correct statement of the case:

This is a conviction for bigamy with a punishment assessed at confinement in the penitentiary for a term of three years, The first marriage of defendant was in the city of New Orleans in October, 1902. He abandoned this wife and the latter part of January, 1903, located in Greenville, Texas, where on November 30, 1903, he was married to Miss Mattie Jennings.  Upon the trial both marriages were admitted. That the first wife was living at the time of the second marriage was also admitted, but it was contended by the defendant that his second marriage was entered into under the mistaken belief that the first wife. was dead.  Upon this issue and the law applicable thereto the case was tried with the above result.

*Yates & Carpenter,* for appellant.—The charge was error, because the jury were required to believe from the evidence that the defendant exercised proper care to ascertain whether his first wife was in fact dead, before they could acquit him, notwithstanding they might find that the defendant believed her dead, and regardless of whether a failure to exercise proper care was the cause of such belief, or regardless of whether such mistaken belief "arose from a want of proper care."

If defendant had been informed and believed at the time he married Mattie Jennings that his first wife was dead, and if he failed to exercise proper care to ascertain whether she was in fact dead, he would nevertheless be guilty of no offense, unless this mistake of fact arose from a want of proper care on his part.  Willson's Crim. Stats., arts. 46, 47.

Evidence of extraneous crimes, or attempts or offers to commit other crimes, is never admissible unless contemporaneous with the offense for which the defendant is being tried and form a part of the res gestae, or go to show an intent to commit such crime, or unless such extraneous crimes are connected with the offense for which the defendant is being tried so that all taken together form a series of crimes, so that evidence of one serves to connect the defendant with the commission of the crime for which he is being tried.  Denton v. State, 60 S. W. Rep., 670; Smith v. State, 73 S. W. Rep., 401; McAnally v. State, 73 S. W. Rep., 404.

Evidence of the defendant's offer or intention to commit the crime of abortion was not admissible to rebut the defendant's contention that he was not guilty of the crime of seducing Vinnie Gunn in 1901, because defendant was not being tried for the crime of seduction, and because

such evidence did not tend to rebut such contention had the defendant been on trial for such crime.

The statement of another's disapproval of an act after its commission is never admissible though made in the presence of the defendant, unless the same, taken with defendant's statement at the time, serves to shed some light upon a controverted issue in the case.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of bigamy, and his punishment assessed at three years confinement in the penitentiary.

The first bill of exception complains of the following portion of the court's charge: "Our statute provides that if any person laboring under a mistake as to a particular fact shall do an act which would otherwise be criminal, he is guilty of no offense. The mistake as to fact which will excuse a person must be such that the person so acting under a mistake would have been excusable had his conjecture as to the fact been correct, and it must also be such mistake as does not arise from a want of proper care on the part of the person committing the offense. Therefore, if you believe from the evidence that defendant had been informed and believed at the time he married Mattie Jennings that his first wife was dead, and if you believe he exercised proper care to ascertain whether she was in fact dead, then in that event you will acquit him. If you believe the defendant was laboring under a mistake of fact as to his first wife's death, but you believe such mistake arose from a want of proper care on his part, such mistake would not avail him." Appellant insists that the second paragraph casts a greater burden upon defendant than the law authorizes, and requires the jury to find that he exercised proper care before they could acquit, regardless of whether or not his failure to use such care was the proximate cause of his mistake of fact, or that such mistake of fact arose from a want of proper care; and because the second and third paragraphs of the charge are argumentative and calculated to impress the jury that, in the opinion of the court, defendant was guilty of bigamy. We think the charge of the court is correct. After copying the statute in reference to a mistake of fact, there appears to be a clear application of the law to the facts of this case. Nor is the charge argumentative, as insisted, but properly instructs the jury that if defendant did not exercise proper care he could not rely upon mistake of fact.

Appellant tendered the following special instruction: "If you find from the evidence that defendant received letters from his brother, from Wm. Hancock, O. W. Rock, Frank Aiken and W. L. Harris, prior to his second marriage, informing him of the death of his first wife, and was told by the said Aiken and W. S. Earp that she was dead, and that at the time of his second marriage he believed said wife was dead,

and that he was using proper care in so believing, you will acquit defendant, or if you have a reasonable doubt as to whether 'or not he received such letters or was so told and so believed, or that he exercised proper care in so believing, then you will acquit defendant." This charge, so far as applicable was given in the charge quoted. We do not think it is incumbent on the court to specify the sources of information which leads to a mistake of fact as this charge appears to do. It might not be amiss to do so in certain cases, but we do not think there was any error in failing to do so in this. Bills of exception 3 and 4 present practically the same character of charge.

Bill of exceptions number 5 complains of the action of the court permitting the State to introduce the following contract in evidence, to wit:

"State of Mississippi, Lauderdale County. I hereby agree and bind myself to make reparation for the wrong I have done Miss Vinnie L. Gunn in seducing her and in failing to marry her, as I promised her to do, by fulfilling the promise and marrying her, on the 16th day of October, 1902; and I hereby pledge myself to go to New Orleans by said day, with O. D. Gunn, the father, and in his presence perform this obligation. I further pledge myself to take and treat her as a wife. Witness my signature this the 10th day of October, 1892. (Signed) W. L. Welch."

The objections urged are, because said offense of seduction was not shown to have been contemporaneous with the offense for which defendant was being tried; was no part of the res gestae; did not show or tend to show system of bigamy or other crimes; did not show or tend to show defendant's intent in this case, and was not necessary for the identification of defendant; was irrelevant and immaterial and highly prejudicial to defendant before the jury. The bill is approved with the following explanation: "The execution of the instrument was proved; and besides it had been proved without objection that defendant was under indictment for seducing Vinnie L. Gunn, at the time he married her, and that he had agreed to and did marry her on account of said prosecution at the time, place and under the circumstances stated in the instrument." While this evidence was not admissible, yet it becomes harmless error in view of the court's explanation. The facts in this case show that appellant married Miss Jennings in Greenville, Texas; and he had previously married Miss Vinnie L. Gunn in the city of New Orleans, Louisiana. Prior to the marriage defendant and Miss Gunn had lived in Meridian, Mississippi. The testimony in reference to his seducing his former wife was not legitimate; but in view of the court's explanation that it was introduced without objection on his part, proof of the contract to marry her, signed by defendant, would not be such error as would authorize a reversal of the case. However, in view of the reversal of this case on other grounds, we state that none

of these facts should be admitted for any purpose. Of course, it was proper to prove the first marriage, and that said wife was still living, as a proper predicate for the prosecution for the second marriage. But the fact that he had seduced his first wife would not be admissible for any purpose.

Bill number 6 shows that the State offered in evidence a letter, shown to have been written to Miss Gunn by appellant, the effect of which was that defendant proposed to Miss Gunn to get medicine for the purpose of producing an abortion upon her. The letter is quite lengthy and we do not deem it necessary to copy it in full. The court approves the bill with this qualification: "The State had proved, without objection, that defendant was under indictment in Mississippi for seducing his first wife at the time he married her, and that he had never lived with her; and defendant introduced a letter written by his first wife prior to their marriage, to Aubrey Yarbrough, tending to show that he (Yarbrough) was the author of her ruin, and this letter was introduced in rebuttal of the other letter and the defendant's contention that he was not guilty of seduction; and the jury was instructed, at the request of defendant that defendant was not on trial for seduction, and that he could not be convicted for seduction." The explanation does not authorize the admission of this letter in evidence. The mere fact that appellant had permitted evidence to be introduced without objection, proving or tending to prove seduction, and that he introduced a letter to disprove the seduction, would not authorize the State to introduce evidence to prove that he proposed to create or attempt an abortion upon his first wife.

The seventh bill of exceptions complains that the State was permitted to ask Mrs. Robert Meade, on direct examination, the following: "What did he (defendant) say about wanting some medicine?" Witness answered: "He said he wanted to get some medicine; that a girl was in trouble, and he wanted some medicine to save the girl from disgrace." Defendant objected to this testimony because it tended to show an intention on the part of the defendant at that time to commit the offense of abortion, or to assist or cause said crime to be committed, and such crime or intention of committing the same was not shown to be contemporaneous with the offense for which defendant was being tried; was no part of the res gestae; did not show a system of bigamy or other crimes; did not show or in anywise tend to show an intent on the part of defendant to commit the offense for which he was being tried, and it was not necessary for the purpose of the identification of defendant, etc. From the record it appears that defendant boarded with Mrs. Robert Meade in Vicksburg, Mississippi, sometime prior to his coming to Greenville, where he married his second wife. This conversation purports to have taken place in Vicksburg, prior to defendant coming to Texas. The court approves the bill with the same

explanation as attached to the sixth bill above. This testimony should not have been admitted.

The eighth bill complains of the following: Robert Meade being upon the stand, the State asked the following questions: "Q. What meeting are you talking about? A. The one at the house (meaning witness' house) the first day after he (meaning defendant) married Miss Jennings. Q. You heard them (witness' wife and defendant) talking about it when you came home? A. They were just talking in an ordinary conversation. Q. What was said there; what did you hear said there? A. I heard my wife say to defendant that she was very much afraid he had made the wrong step in life, and that she was very much surprised." To which defendant objected because said conversation took place after defendant's second marriage, and after the offense for which defendant is indicted was committed, and was irrelevant and immaterial. All of which objections were overruled. This bill is approved with the qualification: "That this is a statement to defendant which naturally called for a reply from him, as to why he had married when the testimony showed he then had a wife living." If the witness' wife had accused defendant of marrying twice, and he had made no reply, this testimony would have been admissible, but it seems the wife merely expressed disapprobation of the marriage, and it seems did not say anything indicating she thought he was marrying the second time and had a wife then living—this would be a bare inference, and one we are not authorized to indulge. If an accused says nothing and remains silent when such question is asked him, his silence can be used as a criminating fact against him; but when he makes no reply to statements having an ambiguous or double meaning, such statements can not be introduced when he is subsequently on trial. In other words, the statement must show some criminality. Similar testimony to that here complained of was held reversible error in Denton v. State, 9 Texas Ct. Rep., 947.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*